# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Alan Wyman (M-15346),     )
)
          Petitioner,     )
)     No. 18 C 5509
     v.     )
)     Hon. Jorge L. Alonso
Stephanie Dorethy, Warden,     )
Hill Correctional Center,     )
)
          Respondent.     )

## MEMORANDUM OPINION AND ORDER

Petitioner Alan Wyman, a prisoner at Hill Correctional Center proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his Cook County convictions for aggravated sexual assault and aggravated kidnapping in 2006. This matter has been fully briefed. For the reasons below, the Court denies the § 2254 petition and declines to issue a certificate of appealability.

## I. BACKGROUND

**Petitioner's Trial:**

The below description of the offenses and trial evidence is taken from the state appellate court opinion.[1]

> Alan Wyman was accused by a female, M.F., of sexual assault. The parties met and had hung out at petitioner's apartment on a few occasions. M.F. acknowledged that they had consensual sex the third time that she came to his apartment. When she was there the fourth time and was taking a shower, petitioner came into the shower

---

[1] This Court looks to the state appellate court decisions in Petitioner's direct and post-conviction appeals for the background facts. *See People v. Wyman*, 2013 IL App (1st) 102615-U (Ill. App. Ct. 2013); *People v. Wyman*, 2017 IL App (1st) 142338-U (Ill. App. Ct. 2017). This Court may "take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)); *see also Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004). The above quoted facts are from the state appellate court's decision in Petitioner's post-conviction appeal. *Wyman*, 2017 IL App (1st) 142338-U. This Court notes that the facts in the state appellate decision on direct appeal are much more thorough, but they are also three times longer. *Wyman*, 2013 IL App (1st) 102615-U. The post-conviction appellate decision provides enough details for this opinion's Background facts.

and groped her and said that he wanted to have sex. She refused and pushed him away. Nothing further happened that night, and M.F. fell asleep on petitioner's couch. However, when she awoke, Wyman had laid her on his bed and was attaching cables around her ankles. Petitioner further restrained M.F. by putting a restraint around her neck and securing her wrists to the headboard or wall. She was also blindfolded and a golf ball or ball gag was put in her mouth. She testified that petitioner also punched her in the ribs and she believed her ribs had been broken.

M.F. testified that the physical and sexual assaults continued for a four-day period. She was repeatedly beaten, restrained with cables, and threatened with physical harm or death if she tried to escape. Petitioner also had a small room in the back of his closet that he made M.F. crawl into. She was sexually assaulted in that small room where she was attached to another set of cables. She was ordered to go into that room on several occasions. At one point, petitioner banged her head so hard against the floor that she lost consciousness.

During the fourth day at petitioner's apartment, petitioner left the premises. M.F. was still tied to the bed, blindfolded and gagged. An individual then-unknown to M.F., Joseph Swain, came into the apartment looking for petitioner. M.F. heard someone in the apartment and was able to spit out the golf ball in her mouth and remove her blindfold and get the man's attention by yelling. She testified that she told Swain that petitioner had kidnapped and raped her and was going to kill her. Swain saw that M.F. was tied to the bed. However, he was freaked out and left, but did not call the police. Petitioner returned to his apartment and he drove M.F. to her ex-husband's son's house and then he drove off.

Near the location she was dropped off, M.F. approached a couple walking down the street and told them to call 911. Samuel Crockett, one of the individuals approached by M.F., testified that she was extremely distraught. When police arrived, Officer Robert Breen observed M.F. and believed her to be very distraught and it appeared to him that she had been crying for a while. M.F. was taken to the hospital. M.F. provided the police with one of the restraints that had been used to restrain her that she had put with her belongings before leaving petitioner's apartment.

Petitioner's side of the story was a bit different. He testified that the sexual contact with M.F. indeed occurred, but that it was consensual. He denied punching her and otherwise physically abusing her. Petitioner claimed that he had a girlfriend in the past that got him interested in bondage sex. They had outfitted his apartment with the cables and other restraint materials. He testified that he engaged in similar conduct with M.F.

Petitioner testified that M.F. contacted him and asked if she could stay at his place because she had been on the street for a few days. M.F. admitted that she was addicted to drugs and had been recently evicted from her apartment. She was using drugs during the period she met petitioner, but she testified that she stopped using

drugs as of December 10, 2006 and had not used them since. Cellphone records confirmed that the parties exchanged multiple phone calls. A few days after the parties had consensual sex, petitioner claims that he decided that he wanted to do something for his birthday. He testified that he called M.F. and offered her $500 to stay at his house for a few days and engage in bondage sex at his discretion. He admitted that he had engaged prostitutes before because, as he put it, he had become lonely in his late 40s and did not have a real social network.

Petitioner went on to describe the sexual incidences in similar ways that M.F. described them, albeit while maintaining that everything was consensual and that he did not punch her or bang her head against the ground. He claimed that when Swain came to his house and saw M.F., Swain was freaked out at the beginning, but petitioner explained that M.F. was a prostitute and that there was no need to call police. Petitioner claims that shortly after Swain visited the house was when things went wrong because he and M.F. had a dispute over money and M.F. believed he had invited Swain over to have sex with her. Because M.F. was without a residence, petitioner asked her where she wanted to go and he dropped her off at her ex-husband's son's house which was just four blocks away.

The police searched petitioner's apartment after he gave consent. The police seized a variety of things including: handwritten notes and lists, black clothing and sunglasses, zip ties, tools, a stun gun, a magnetic license plate, multiple backpacks, and a briefcase modified with a false bottom. On a second inspection of petitioner's apartment, the police recorded their observations that metal bars were secured to the outside of certain windows and wood was used to cover windows as well.

Petitioner's DNA was found in M.F.'s vaginal swabs. She was anxious and crying while she was at the hospital, and she told the doctors that she had been abused and raped for three days. The doctor that treated M.F. noted that there were scratches on her neck, wrist, ankles, lower back, and buttocks. Her vital signs were normal and there were no signs of physical trauma, such as broken ribs or head contusions, just soreness that she reported.

The State also presented the testimony of T.T., an "other crimes" witness. T.T.'s interactions with petitioner were about a year before his interactions with M.F. T.T. testified that she was looking for work and defendant indicated that he may have a job for her. Petitioner told T.T. that he had employment applications at his apartment. She claims that once she was inside the apartment, petitioner began to choke her and punch her in the stomach. He then used plastic cuffs to bind her hands and feet. He blindfolded her and tried to put a ball gag in her mouth. He then undid the zip ties around her feet, walked her to the bedroom, and secured her to the bed with cables. While she was restrained he put his mouth on her vagina and then he raped her.

T.T. begged to be let go and said that she needed to pick up her kids from school. She promised she would not call the police because she was a prostitute. Petitioner

drove her to the Christopher House school. When T.T. went into the school, she had the receptionist call the police. Petitioner was gone by the time police arrived. At the hospital, T.T.'s vaginal swab was positive for petitioner's DNA.

Petitioner testified about his interactions with T.T. He agreed that they met and discussed her desire for employment. Petitioner testified that he asked her out and they went out on multiple dates. He claims that after one lunch date, they went back to his apartment and, while they were kissing, he asked if he could tie her to the bed. She was not interested, but she agreed after she was offered $30. Petitioner testified that T.T. became angry after sex, indicating that petitioner had taken advantage of her. He claimed that when he drove her to her children's school she was still mad and said she would call the police if he was still there when she came back. Petitioner also claims he received two phone calls and messages on his answering machine from T.T. the following week, one seeking a return call, but he did not call her back.

Important to these postconviction proceedings, T.T. described how she arrived at petitioner's apartment. She testified that she was persuaded to come to petitioner's apartment by a promise of potential employment, but that she did not have transportation to get there. Petitioner picked her up at Claremont and Devon Avenues in Chicago and drove her down Western Avenue until they parked on a side street, walked to the back entrance of a building, and went to the second floor apartment. T.T. stated that, while in transit to petitioner's apartment down Western, they passed a police station and a bowling alley.

The jury found petitioner guilty of two counts of sexual assault and aggravated kidnapping.

*Wyman*, 2017 IL App (1st) 142338-U, ¶¶ 5-18.

**Petitioner's Direct Appeal and PLA:**

On direct appeal, Petitioner argued: (1) the trial court erred when it granted the State's motion to bar Petitioner's attempt to call an expert to testify about bondage sex; (2) the trial court erred by allowing into evidence items found in Petitioner's apartment that were unrelated to the charged offenses; (3) the trial court erroneously allowed almost all the trial exhibits to go to the jury room during deliberations; (4) the prosecutor made improper remarks during closing argument; and (5) the trial court failed to inform the jury venire about basic rights pursuant to Ill.

S. Ct. Rule 431 (the presumption of innocence, and the defendant's right not to testify). *Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 50-103. The state appellate court rejected these claims. *Id.*

Petitioner's petition for leave to appeal (PLA) in the Illinois Supreme Court asserted three claims: (1) the state appellate court erred when it found over 20 trial errors—multiple instances of admitting irrelevant evidence and improper prosecutor comments—but considered each error individually, as opposed to addressing their cumulative effect; (2) the appellate court erroneously determined that the evidence was "not closely balanced" when refusing to engage in plain-error review; and (3) the denial of Petitioner's request to present evidence about bondage sex deprived him of a defense. (Dkt. 11-6, pg. 1-22.) The Illinois Supreme Court denied the PLA. *People v. Wyman*, 996 N.E.2d 22 (Ill. 2013) (Table).

**Petitioner's Post-Conviction Proceedings:**

Petitioner filed a post-conviction petition in state court, arguing that his trial attorney was ineffective for: (1) failing to investigate a witness who would have discredited M.F., (2) failing to use a map to impeach T.T.'s testimony about landmarks she stated she saw when being driven to Petitioner's apartment, and (3) failing to question T.T. about the fact that she had Petitioner's phone number but never gave it to officers when they investigated her sexual-assault complaint. (Dkt. 11-12, pg. 70-103.) The state trial court dismissed the petition as frivolous and patently without merit at the first level of review. *Id.* at 141-48. On appeal, through an appointed attorney, Petitioner raised only two of the above-listed ineffective-assistance claims: failure to investigate the witness who would have discredited M.F. and failure to use a map to impeach T.T.'s testimony. The state appellate court rejected both claims. *See People v. Wyman*, 2017 IL App (1st) 142338-U, ¶ 23 (Ill. App. Ct. 2017).

Petitioner's *pro se* PLA asserted the same three ineffective assistance grounds argued in his post-conviction petition, and added a claim that his right to confront T.T. was violated. (Dkt. 11-11.) The state supreme court denied the PLA. *People v. Wyman*, 94 N.E.3d 660 (Ill. 2018) (Table). Petitioner then filed the instant 28 U.S.C. § 2254 petition.

## II. PETITIONER'S § 2254 PETITION

To describe Petitioner's federal habeas claims, the Court follows Respondent's listing of the claims, which Petitioner also follows in his Traverse brief. To ensure that the Court addresses all of Petitioner's claims, Claims 2 and 3 in his § 2254 petition are listed as Claims 8 and 9 below:[2]

(1)      the trial court's refusal to allow expert testimony about bondage sex deprived Petitioner of his constitutional right to put on a defense;

(2)      Petitioner's due process right to a fair trial was violated when the trial court admitted into evidence: (a) Petitioner's handwritten notes, blacked-out sunglasses, a license plate with magnets, a stun gun, and (b) black clothing, a trick briefcase, wire cutters, and other tools;

(3)      the trial court violated Petitioner's due process right to a fair trial by sending most of the trial exhibits back to the jury room;

(4)      the prosecutor's improper remarks during closing arguments violated Petitioner's constitutional right to a fair trial;

(5)      trial counsel was ineffective when he failed to investigate a witness who sent Petitioner a letter disparaging M.F.'s character;

(6)      trial counsel was ineffective for failing to impeach T.T. (a) with the fact that she had Petitioner's phone number but never gave it to officers when she accused him of sexual assault, and (b) with a map to show that she could not have seen the landmarks she testified she saw while Petitioner drove her to his apartment;

---

[2] Claim 2 in Petitioner's § 2254 petition argues that the trial court erred in its harmless-error analysis by not considering the cumulative effect of trial errors; his Claim 3 contends the state appellate court misapplied Illinois' plain-error review. (Dkt. 1, pg. 5, 7.) Respondent, however, addresses the individual claims leading to the state appellate court's harmless-error analysis—the trial court's admission of irrelevant evidence, the trial court's sending evidence back to the jury room, and the prosecutor's improper closing statements. (Dkt. 12, pg. 10.) Petitioner's Traverse acknowledges that Respondent "parse[s] the issues . . . in a slightly different manner," but then, "for the convenience of all parties," follows Respondent's "schematic arrangement." (Dkt. 22, pg. 5.) This Court, for completeness purposes, will follow Respondent's approach, which gives Petitioner more claims, and then address Petitioner's contentions that the state appellate court misapplied the harmless-error and plain error standards.

(7)     Petitioner's Sixth Amendment confrontation right was violated with respect
        to T.T.'s testimony;

(8)     the state appellate court's harmless-error analysis failed to consider the
        cumulative effect of trial errors; and

(9)     the state appellate court erroneously determined that the evidence against
        Petitioner was not closely balanced when it refused to consider claims under
        plain error review.

(Dkt. 1, pg. 5-7); (Dkt. 12, pg. 10); (Dkt. 22, pg. 5.)  As explained below, none of these

claims warrant federal habeas relief.

1.      **The Trial Court's Refusal to Allow Expert Testimony About Bondage Sex Did Not
        Deprive Petitioner of his Constitutional Right to Put on a Defense.**

Petitioner argues he was denied his constitutional right to present a defense when the trial

court granted the State's pretrial motion to bar expert testimony about bondage sex, particularly

since the trial court later allowed into evidence bondage-sex paraphernalia found in his apartment.

(Dkt. 1, pg. 5-6.)  According to Petitioner, expert testimony about bondage sex was relevant to the

central issue of whether M.F. consented to the sex acts: "Without the necessary authority of an

expert on consensual bondage sex to explain both the proper use of the equipment and the possible

minor injuries . . ., such as [M.F.]'s bruised wrists—her only injuries—the defendant was denied

his 6th Amendment right to procure witnesses in his defense and his 5th and 14th Amendment

rights to the due process of a fair trial." *Id.* at 6.

Respondent contends this claim is procedurally defaulted because Petitioner failed to raise

it in a post-trial motion for new trial, resulting in the state appellate court reviewing the claim only

for plain error.  (Dkt. 11, pg. 12.)  But whether the appellate court denied this claim under plain-

error or a merits review is unclear.[3]  For a procedural default to apply, the state court must have

---

[3] The state court noted that Petitioner did not raise the claim in a post-trial motion pursuant to Illinois law, but also
noted that the issue was addressed at a pretrial hearing and concerned a constitutional right to a fair trial. *Wyman*, 2013

"'actually relied on the procedural bar." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (citation omitted).

Also unclear is whether the state appellate court decided the constitutional issue or whether its denial of this claim rested solely on state law. The state court began its analysis discussing the constitutional due process right to a fair trial, but then held that the trial court did not abuse its discretion under Illinois evidentiary rules.[4] *Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 53-57. "Where the state courts did not reach a federal constitutional issue, 'the claim is reviewed *de novo*.'" *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (quoting *Cone v. Bell*, 556 U.S. 449, 472 (2009)). Even under *de novo* review, this claim warrants no federal habeas corpus relief.

"To establish that his right to compulsory process was violated by the exclusion of . . . testimony, [Petitioner] must show that (1) the testimony would have been 'both material and favorable' to his defense, *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982), and (2) the exclusion was 'arbitrary' or 'disproportionate' to the evidentiary purposes advanced by the exclusion." *Makiel v. Butler*, 782 F.3d 882, 907 (7th Cir. 2015) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *see also Harris*, 698 F.3d at 627-39.

---

IL App (1st) 102615-U, ¶¶ 50-52; *see also People v. McCallister*, 737 N.E.2d 196, 214-15 (Ill. 2000) (though Illinois courts usually consider a claim not raised in a post-trial motion for new trial unpreserved for appellate review, where the claim "concern[ed] defendant's due process right to present a defense and … was raised by the defense at trial," an Illinois appellate court may review the merits). Reasoning that "[t]he first step in conducting plain-error review is to determine whether error occurred at all," the appellate court went to the merits. *Id*. at ¶¶ 52-53.

[4] The state appellate court began its analysis of this claim: "A criminal defendant's constitutional right to due process is the right to a fundamentally fair trial and includes the defendant's right to present witnesses in his own behalf." *Wyman*, 2013 IL App (1st) 102615-U, ¶ 53. But the state court then determined that trial court's exclusion of expert testimony on bondage sex was not an abuse of discretion under Illinois evidentiary law. *Id.* at ¶¶ 53-57. The appellate court never returned to the constitutional issue. *Id.* Arguably, the state appellate court's acknowledgement of the constitutional issue suffices to be considered a decision on the merits for 28 U.S.C. § 2254(d)'s deferential review standard. *See Malinowski v. Smith*, 509 F.3d 328, 332-34 (7th Cir. 2007). The lack of analysis on the constitutional issue, however, makes determining whether the state appellate court's decision "involved an unreasonable application of, clearly established Federal law" virtually impossible. § 2254(d)(1). Accordingly, this Court will review the claim on the merits. This Court's determination of no merit should also demonstrate that the state appellate court's decision was not unreasonable under § 2254(d).

To establish that a constitutional due process violation occurred with a state court's evidentiary ruling, Petitioner must show that the ruling was "so prejudicial that it compromise[d] . . . [his] . . . right to a fundamentally fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999); *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004).

A defendant's Sixth Amendment right to compulsory process, "together with the Due Process Clause of the Fourteenth Amendment, embodies a substantive right to present a meaningful and complete criminal defense." *Makiel*, 782 F.3d at 907 (citation omitted). This right, however, is not unlimited, and defendants "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Id.* (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). Although defendants have a constitutional right to present testimony in their favor, that right "must 'bow to accommodate other legitimate interests in the criminal trial process.'" *Makiel*, 782 F.3d at 907 (cite omitted). Such legitimate interests include "the integrity of the adversary process," and neither the Sixth Amendment's Compulsory Process Clause nor the constitutional due process right to a fair trial "require criminal courts to admit evidence that is irrelevant." *Id.* (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986)); *see also United States v. Hook*, 195 F.3d 299, 308 (7th Cir. 1999).

In Petitioner's case, it was apparent even before trial that educating jurors about bondage sex was irrelevant to the central issue of consent. At a pretrial hearing, the parties discussed the reasons for the sex expert's testimony. Petitioner's attorney argued that the expert would provide greater information about bondage sex, why people engage in it, the normalcy of it, the removal of sadomasochism as a pathology in the DSM, the role playing that occurs, the devices used, the unanticipated injuries that can occur, and how participants can engage in better bondage sex. (Dkt.

11-18, pg. 112-25.)  Responding, the prosecutor stated: "We don't need someone who wrote the book, 'The Wild Side of Sex' or who performs at all these fetich balls . . . she would not be the proper expert at all to testify . . . in this extremely serious case." *Id.* at 125.  After the hearing, the trial court concluded:

> I thought about this, and it seems to me that if the issue were how to do bondage safely or how to get more out of a bondage experience or is bondage a good thing or a bad thing . . . she would probably have some testimony that would be beyond the understanding of the average juror.
>
> However, the issue in this case is consent, which is not a subject that is beyond the understanding of the average juror, and indeed, the testimony of this expert would have nothing to do with consent it seems to me. Her testimony would do nothing but confuse the jury I think.

*Id.* at 132-33.

The state appellate court, after carefully considering the trial evidence, agreed that the main issue in the case was whether M.F. consented to having sex and not the type of sex, and that educating jurors about bondage sex "would not have aided the[m] in resolving [Petitioner's and M.F.'s] competing versions of events because the issue of consent did not concern the bondage sex itself." *Wyman*, 2013 IL App (1st) 102615-U, ¶ 56.  Even Petitioner in his § 2254 petition acknowledges that the issue of guilt "boiled down to an argument of he said-she said" and consent. (Dkt. 1, pg. 5.)  This Court joins the state trial and appellate courts' conclusions that educating jurors about bondage sex was unnecessary to decide the issue of consent.  Petitioner has not demonstrated that the sex expert's testimony was material to the central issue of consent, or that the trial court's exclusion of such testimony was arbitrary or led to the conviction of an innocent person.  He has not shown that the state trial court's evidentiary ruling violated his constitutional rights to a fair trial, to compulsory process, or to present a defense.  Claim One is without merit and denied.

**2(a).**   **The Trial Court's Admission of Irrelevant Evidence--Handwritten Notes, Sunglasses, Stun Gun, License Plate—Warrants No Federal Habeas Relief.**

Prior to trial, Petitioner moved to bar the admission of several pieces of evidence found in his apartment:  handwritten notes, sunglasses with its lenses blacked out, a stun gun, and a license plate with magnets attached to it.  *See Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 6-7, 21.   The trial court denied the motion upon determining that the evidence appeared relevant and that Petitioner could challenge the weight of the evidence at trial.  *Id.*

On direct appeal, Petitioner argued that the above-listed items were irrelevant and prejudicial under Illinois' evidentiary law; their admission violated his constitutional right to a fair trial, and their admission was not harmless.  (Dkt. 11-1, pg. 44-54.)   The state appellate court agreed that the handwritten notes were irrelevant and improperly admitted.[5]  *Id.* at ¶ 63.  So were the stun gun and blacked out sunglasses.  *Id.* at ¶ 66.  The license plate, however, was considered relevant since M.F. testified she saw license plates in Petitioner's apartment, and evidence that he had multiple plates could have shown an intent to conceal his identity.  *Id.* at ¶ 65.

With respect to the wrongly admitted irrelevant evidence, the state appellate court did not address whether the evidence's admission violated Petitioner's constitutional right to a fair trial. *See id.* at ¶¶ 62-70.   Instead, using the harmless-error standard for constitutional errors, the state court determined that the evidence's admission was harmless as it was "beyond a reasonable doubt that the error did not contribute to the jury's verdict."  *Id.* at ¶ 67 (citing *People v. Patterson*, 841 N.E.2d 889, 901 (Ill. 2005) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)); *Satterwhite*

---

[5] Seven pages of handwritten notes were retrieved from Petitioner's apartment, stating in part: "looks like 6:30 a.m., alley workers waiting. … 6:45 a.m., and the beautiful blond still runs on Wells with her dogs 6:55 a.m. Tuesday. Final punch list, stuff not already in kit, coat, garment, bag plus contents. Heater, cell, knife, Mace."" *Wyman*, 2013 IL App (1st) 102615-U, ¶ 21. The state appellate court agreed with Petitioner that the notes, while suggesting that he "was planning to do something, … d[id] not tend to show [he] was planning to commit the criminal acts at issue because the majority of the notes [we]re unrelated to the acts." *Id.* at ¶ 63.

*v. Texas*, 486 U.S. 249, 258–59 (1988); and *Chapman v. California*, 386 U.S. 18, 24 (1967)). Whether the state appellate court assumed that the erroneous admission of irrelevant evidence was a constitutional violation and then employed *Chapman*'s harmless-error standard, or whether the state court applied the *Chapman* standard for a state evidentiary error, which appears to be a heavier standard than needed, is unclear.[6]  What is clear, however, is that the state appellate court reasonably applied the *Chapman* standard.  The state appellate court reasoned:

> Having determined that the trial court erred by admitting evidence of the handwritten notes, stun gun, and blacked-out sunglasses, we now consider whether such error was harmless. An erroneous evidentiary ruling will constitute harmless error if the State can establish beyond a reasonable doubt that the error did not contribute to the jury's verdict. *People v. Patterson*, 217 Ill.2d 407, 428 (2005).
>
> As stated earlier, the jury was presented with two competing versions of events in this case: M.F. testified that defendant restrained her and had sex with her against her will over the course of four days and defendant testified that M.F. consented to his sexual conduct as part of an agreement to engage in bondage sex in exchange for money. Swain's testimony as to events that took place on the evening of September 30, 2006, was consistent with M.F.'s testimony that she briefly encountered a man in defendant's apartment while she was restrained on defendant's bed that same evening and that the man left the apartment without contacting the police despite her pleas that he do so and contradicted defendant's testimony that he encountered Swain outside his apartment building on September 29, 2006. The testimony of Crockett and Officer Breen that they encountered a distraught woman on the evening of September 30, 2006, was consistent with M.F.'s testimony that she did not consent to defendant's sexual conduct and that defendant dropped her off on the front steps of her ex-husband's son's house that evening and was not consistent with defendant's testimony that M.F. disappeared to the back of her ex-husband's house after defendant had dropped her off earlier that day. The State also presented T.T.'s testimony to show defendant's propensity to commit sex crimes, motive, intent, identity, absence of mistake, and absence of consent.

---

[6] In Illinois, an "evidentiary error is harmless 'where there is no *reasonable probability* that the jury would have acquitted the defendant absent the' error." *In re E.H.*, 863 N.E.2d 231, 235 (Ill. 2006) (emphasis in original, citation omitted). Illinois courts, however, have recognized that they have employed the more demanding *Chapman* harmless-error standard for constitutional errors when addressing errors of state evidentiary law. *See id.*; *People v. Miller*, 706 N.E.2d 947, 953 (Ill. App. Ct. 1st Dist. 1998); *People v. Stull*, 5 N.E.3d 328, 347 (Ill. App. Ct. 4th Dist. 2014); *see also People v. Sheppard*, 2021 IL App (1st) 181613, ¶ 23 (Ill. App. Ct. 1st Dist. 2021) (even as recently as this year, an Illinois court conflated the two standards stating that an evidentiary error is harmless if "no reasonable probability exists that the trial court would have acquitted the defendant absent the error," but then said that the "State bears the burden of establishing harmless error beyond a reasonable doubt").

While defendant presented evidence showing that a number of short phone calls were made between his phone and M.F.'s phone on September 28, 2006, that evidence did little to contradict M.F.'s testimony because M.F. testified that defendant was in possession of her phone at that time. Also, the alleged inconsistencies between the testimony of M.F. and T.T. and their prior statements to various police officers did little to diminish their credibility because the inconsistencies, such as whether defendant told T.T. to take a shower were limited, minor, and not directly related to non-consensual sex.

As such, M.F.'s testimony was consistent with the majority of the other evidence presented at trial and defendant's testimony was not. Therefore, the evidence in this case was not closely balanced, and we conclude that the trial court's admission of the handwritten notes, stun gun, and blacked-out sunglasses constitutes harmless error and does not require reversal because it did not contribute to the jury's verdict.

*Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 67-70.

The state appellate court's harmless-error analysis was neither contrary to nor an unreasonable application of clearly established law; nor did it involve an unreasonable determination of facts in light of the evidence. *See* 28 U.S.C. § 2254(d); *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009) (§ 2254(d)'s deferential standard of review applies to a state court's harmless-error determination under *Chapman*); *Jensen v. Clements*, 800 F.3d 892, 900-02 (7th Cir. 2015) (same). The appellate court correctly stated the standard, *see Chapman*, 386 U.S. at 24, and its description of the evidence—not only in the analysis quoted above, but also in its comprehensive discussion of the evidence in the Background section preceding it—is well supported by the trial record. (Dkt. 11-18 through 11-26.) Additionally, when determining the effect of the improperly admitted evidence, the state appellate court considered not only the evidence against Petitioner, but also the evidence in his favor and weaknesses in the State's case. *See Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 68-70. The state appellate court's harmless-error

determination was neither incorrect nor unreasonable under § 2254(d).[7]  *See* § 2254(d); *Johnson*, 572 F.3d at 406.

The state appellate court's reasonable application of the *Chapman* harmless-error standard obviates this Court's need to address the merits of Petitioner's due process claim with respect to the admission of irrelevant evidence.  *See Milton v. Wainwright*, 407 U.S. 371, 372 (1972) (never addressing the merits of whether the erroneous admission of evidence resulted in a constitutional violation since any such error was harmless); *United States v. Carl*, 593 F.3d 115, 119 (1st Cir. 2010); *United States v. Lott*, 433 F.3d 718, 721 (10th Cir. 2006).  Even if this Court were to reach the merits of Petitioner's due process claim, the state appellate court's *Chapman* harmless-error analysis, which as noted above was applied correctly, demonstrates the lack of a due process violation arising from the admission of irrelevant evidence.  "[T]he *Chapman* harmless-error standard is more demanding than the 'fundamental fairness' inquiry of the Due Process Clause," such that "it is clear that [a court that determines an error was harmless under *Chapman*] also would have found no due process violation."  *Greer v. Miller*, 483 U.S. 756, 767, n.7 (1987).  For all the reasons stated above, no § 2254 relief is available for Claim 2(a), which is denied.

**2(b).**   **Petitioner's Claim—that the Admission of Other Evidence Found in His Apartment (black clothing, a briefcase, wire cutters and other tools) Resulted in a Constitutional Violation—is Procedurally Barred and Without Merit.**

Petitioner at trial and on appeal also challenged the introduction of other evidence found in his apartment: black clothing, a briefcase with a false bottom, wire cutters, an axe, a sledgehammer, and a saw.  *Wyman*, 2013 IL App (1st) 102615-U, ¶ 72.  He argued that this

---

[7] This Court recognizes that harmless-error standard on § 2254 review is even higher than the *Chapman* standard that applies on direct review. *Ashburn*, 761 F.3d at 755 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (on habeas review, the harmless-error inquiry is whether the evidence "had a substantial and injurious effect or influence in determining the jury's verdict")). But in this case, this Court is reviewing the state court's application of the *Chapman* standard, to which § 2254(d)'s deferential standard applies. *See Jones*, 635 F.3d at 1052 n.8.

evidence was irrelevant since the State connected none of these items to the charged offenses. *Id.* The state appellate court determined that, except for the wire cutters (which could have been used to release M.F.'s restraints), the above-listed items were irrelevant. *Id.* But because Petitioner failed to challenge the admission of this evidence in a post-trial motion for new trial, the state court addressed the claim only under plain-error review. *Id.* at ¶ 73. Referring to its harmless-error analysis quoted above, the state appellate court determined that plain-error review was unavailable since the evidence at trial was not "so closely balanced that the prejudicial impact of the evidence, when considered in combination with the prejudicial impact of the handwritten notes, stun gun, and blacked-out sunglasses, threatened to tip the scales of justice against him." *Id.* at ¶ 73.

The failure to comply with Illinois' requirement "to include any and all claims of error in a post-trial motion for a new trial . . . amounts to a waiver of the claim" and, when relied upon by the state court, results in a procedural default. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005) (citing *People v. Enoch*, 522 N.E.2d 1124, 1129-30 (Ill. 1988)). The state appellate court, unlike when it addressed Petitioner's claim about the bondage sex expert in Claim One, expressly relied on his failure to challenge the admission of the black clothing, briefcase, and tools in his post-trial motion. *Wyman*, 2013 IL App (1st) 102615-U, ¶ 73. His § 2254 claim about the introduction of these items is thus procedurally defaulted.

Federal habeas review of this claim is available only if Petitioner establishes either (1) cause for the default and actual prejudice or (2) that a fundamental miscarriage of justice will result if the merits of this claim is not reviewed, which requires a showing that new evidence demonstrates he is actually innocent. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). Petitioner demonstrates neither exception. While he argues that his trial attorney was ineffective

for failing to raise the claim in a post-trial motion, he did not exhaust this ineffective-assistance ground, and the state courts have not had an opportunity to address it, which § 2254(b) requires. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (when ineffective assistance of counsel is argued as cause of a procedural default, that ineffective-assistance claim, itself, must have been exhausted); *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). Petitioner's claim that black clothing, a briefcase, and tools were irrelevant and erroneously admitted into evidence is thus procedurally defaulted and barred from federal habeas review.

Beyond the default, however, the claim warrants no federal habeas relief. Even if the trial court erroneously admitted into evidence the above-listed items, the error did not deprive Petitioner of his due process right to a fair trial. As the state appellate court determined, the evidence against Petitioner was overwhelming. *See Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 68-70, 73. Even if this Court could address the merits of this claim, like the state appellate court, it would find that "the prejudicial impact of the evidence, when considered in combination with the prejudicial impact of the handwritten notes, stun gun, and blacked-out sunglasses, [did not] threaten[] to tip the scales of justice against him." *Id.* at ¶ 73. The state appellate court reached this conclusion when determining if plain-error review applied. *Id.* But its conclusion, which was reasonable and correct, demonstrates Petitioner cannot show that the introduction of the black clothing, briefcase, tools, etc. was "so serious as to render it likely that an innocent person was convicted" to establish a due process violation. *Perruquet*, 390 F.3d at 510-11. For all the reasons stated above, Claim 2(b) is denied.

### 3.   Petitioner's Claim that the Trial Court Erred When It Sent Evidence to the Jury Room is Procedurally Defaulted and Without Merit.

Following the close of evidence, while jurors were deliberating, the trial judge sent all of Petitioner's and most of the State's exhibits back to the jury room. *See Wyman*, 2013 IL App (1st)

102615-U, ¶ 77.  At that time, Petitioner did not object; nor did he raise this issue in a post-trial motion.  *Id.*  On direct appeal, he argued that sending the evidence to the jury room was error because it "had little probative value where it was undisputed that defendant restrained M.F. and . . . was prejudicial where it suggested a lack of consent and portrayed defendant as an immoral or criminal person."  *Wyman*, 2013 IL App (1st) 102615-U, ¶ 77.

The state appellate court held that Petitioner forfeited this claim by failing to raise it in the trial court, and that the claim could be reviewed only for plain-error.  *Id.*  The state court then determined that there was no error, plain or otherwise, since most of the evidence was relevant and not overly prejudicial.  *Id.* at ¶ 78.  As to the irrelevant evidence sent to the jury room—the handwritten notes, sunglasses, black clothing, tools—the state court held that no plain error occurred because the evidence in the case was not closely balanced.  *Id.* at ¶ 79; *see also People v. Piatkowski*, 870 N.E.2d 403, 410 (Ill. 2007).

As Petitioner acknowledges, (Dkt. 22, pg. 9), this claim is procedurally defaulted because the state appellate court denied it on adequate and independent state forfeiture grounds.  *See Miranda*, 394 F.3d at 991-92; *Whitehead v. Cowan*, 263 F.3d 708, 727 (7th Cir. 2001).  Petitioner, in an attempt to excuse the default, asserts that his trial attorney's ineffectiveness for failing to object suffices as cause.  (Dkt. 22, pg. 9.)  But Petitioner did not exhaust this ineffective-assistance ground, which is required in order for it to serve as cause for a procedural default.  *See Edwards*, 529 U.S. at 452-53; *Dellinger*, 301 F.3d at 766.  This claim is thus procedurally defaulted from federal habeas review, and Petitioner demonstrates neither exception to excuse the default.

This Court nonetheless notes that, in addition to being procedurally defaulted, the claim is without merit.[8]  As this Court has already determined, the state appellate court's conclusion that

<hr>

[8] Respondent contends this claim is *Teague*-barred because the Supreme Court has never determined that sending evidence back to the jury room can result in a constitutional violation.  (Dkt. 12, pg. 13) (citing *Teague v. Lane*, 489

the evidence against Petitioner was overwhelming was reasonable.  *See Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 68-70.  He cannot establish that sending evidence to the jury room, even if erroneous, was "so serious as to render it likely that an innocent person was convicted."  *Perruquet*, 390 F.3d at 510.  This claim is procedurally defaulted, without merit, and denied.

### 4.    Petitioner's Claim of Prosecutorial Misconduct with Comments Made During Closing Arguments Warrants No Federal Habeas Relief.

On direct appeal, Petitioner asserted four instances of prosecutorial misconduct during closing arguments: (1) the prosecutor impermissibly referred to evidence from Petitioner's apartment (handwritten notes, blacked-out sunglasses, stun gun, tools, license plates, etc.) as a "punch list for crime" and a "rape kit"; (2) the prosecutor impermissibly characterized Petitioner as an "evil man" and M.F. as a "hero"; (3) the prosecutor wrongfully urged the jury to do "its job" and "its duty" and find Petitioner guilty; and (4) the prosecutor incorrectly described "beyond a reasonable doubt" as more than a "slight doubt" or "any doubt."  *Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 81-96.  Petitioner failed to object to these comments at trial.  *Id.* at ¶ 81.  The state appellate court determined that this claim was forfeited; that the prosecutor's comments (even if improper) did not substantially prejudice Petitioner; and that, because the evidence was not closely balanced, no plain error resulted.  *Id.* at ¶¶ 87-96.

Petitioner acknowledges that this claim is procedurally defaulted.  (Dkt. 22, pg. 16-17.)  He again argues that the ineffectiveness of his trial attorney for failing to object suffices as cause to excuse the default.  *Id.* at 15-16.   But as this Court has previously explained, Petitioner did not

---

U.S. 288, 310 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). Respondent may be correct, as this Court has found no Supreme Court cases addressing whether a trial court sending evidence to the jury room can result in a constitutional violation.  But as previously addressed in this opinion, the constitutional due process right to a fundamentally fair trial applies to all court decisions made during trial.  *See Perry*, 565 U.S. at 237; *Perruquet*, 390 F.3d at 510-11; *Anderson*, 243 F.3d at 1053.

exhaust this ineffective assistance ground, which is required to argue it as cause. *Edwards*, 529 U.S. at 452-53; *Dellinger*, 301 F.3d at 766. Claim 4 is thus procedurally defaulted, and Petitioner satisfies neither exception for the default to allow federal habeas review of the claim's merits.

But even if this Court could review the merits, the claim warrants no federal habeas relief. Like claims of erroneous evidentiary rulings that do not directly affect a specific constitutional right, claims of "general prosecutorial misconduct, such as vouching for the credibility of a witness or misstating evidence" are reviewed for the general constitutional right to a fair trial. *United States v. Mietus*, 237 F.3d 866, 870 (7th Cir. 2001). "If . . . the remarks were improper, the court should consider the remarks in light of the entire record to determine if the defendant was deprived of a fair trial; that is, the court should determine 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "[S]trong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Lieberman v. Washington*, 128 F.3d 1085, 1097–98 (7th Cir. 1997) (citations omitted).

When addressing Petitioner's prosecutorial-misconduct claims in post-conviction review, the state trial and appellate courts determined that the evidence against Petitioner was "overwhelming" and "not closely balanced." *See Wyman*, 2013 IL App (1st) 102615-U, ¶ 90. Both courts concluded "that the prosecutor's allegedly improper comments did not affect the jury's verdict." *Id.* The state courts' determinations—both that the evidence against Petitioner was overwhelming and that the prosecutor's closing remarks, even if improper, did not affect the jury's verdict—were supported by the record and were not unreasonable. *See* § 2254(d). Even if this Court could conduct a merits review of this claim, the claim is without merit.

5. **Petitioner's Ineffective-Assistance Claim for Failing to Investigate a Witness is Procedurally Defaulted and Without Merit.**

Petitioner argues that, while he was in jail before trial, he received an unsolicited letter from a woman named Susan Nelson, who allegedly wrote that she knew M.F. and that M.F. was still using drugs, was dishonest, and exhibited no mental anguish from her encounter with Petitioner. According to Petitioner, he "gave the letter to counsel two years before trial . . . but his atty never followed up." (Dkt. 1, pg. 7.)

The state appellate court in Petitioner's post-conviction appeal denied this claim because Petitioner failed to attach to his post-conviction petition either the letter or an affidavit from Nelson stating what she would have said at trial. *Wyman*, 2017 IL App (1st) 142338-U, ¶¶ 22-29 (citing 725 ILCS 5/122-2) (Illinois law requires that the post-conviction "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."). According to the state appellate court, Petitioner provided no affidavit from Nelson, did not "give[] the court any reason to believe that the affidavits would be forthcoming," and "provided zero corroboration for his allegations." *Wyman*, 2017 IL App (1st) 142338-U, ¶ 30.

Illinois' affidavit rule is an independent and adequate state procedural ground resulting in the procedural default of a federal habeas claim. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016); *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). Absent a showing of cause for the default and prejudice, or a showing of actual innocence, this Court cannot review the claim on the merits. *Thompkins*, 698 F.3d at 986. Petitioner makes neither showing.

He explains, as he did in his post-conviction proceedings, that he could not attach the letter to his state post-conviction petition because his attorney never returned it. (Dkt. 22, pg. 17-18.) "The state court," says Petitioner, "seize[d] the opportunity to take advantage of a pro se neophyte . . . to not recognize why the potential witness's affidavit could not be proffered." *Id.* at 17.

To the extent Petitioner argues that the state appellate court erroneously applied 722 ILCS 5/122-2's affidavit rule, "federal courts do not review the merits of the state court's application of its own procedural rules." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015). "Instead, we ask whether the rule invoked was firmly established and regularly followed." *Id.* Only "'when the application [of a state rule] is so surprising, unanticipated, unprecedented, unforeseeable, and indeed freakish as not to be foreseeable by the petitioner, [will] its existence . . . not block [a petitioner] from pressing his federal claims in his federal habeas corpus proceeding.'" *Smith v. Winters*, 337 F.3d 935, 937 (7th Cir. 2003) (citing *Lee v. Kemna*, 534 U.S. 362, 376 (2002)); *see also Crockett*, 807 F.3d at 167.

The state appellate court's application of § 122-2 in this case was not so irregular, surprising, or "freakish" to avoid the independent and adequate state ground bar. *Jones*, 842 F.3d at 461 ("Illinois courts regularly enforce the affidavit rule"). Claim 5 is procedurally defaulted.

But again, even if this Court could review this claim's merits, federal habeas relief is unavailable. To prove ineffective assistance of counsel, Petitioner must demonstrate both: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failing to prove either prong defeats the claim. *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020).

Just as the state appellate court observed, this Court also observes that Petitioner "still does not know if Nelson has anything helpful to offer." *Wyman*, 2017 IL App (1st) 142338-U, ¶ 31. "Where a petitioner claims his trial counsel failed to call a witness . . . he must make a specific, affirmative showing as to what the missing evidence would have been." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). "A defendant cannot simply state that the testimony [of a putative witness] would have been favorable; self-serving speculation will not sustain an ineffective

assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Without showing

what Nelson would have said, Petitioner cannot demonstrate that he was prejudiced by her absence

at trial. This ineffective assistance of counsel claim, in addition to being procedurally defaulted,

is without merit. Claim 5 is denied.

**6(a).** **Petitioner's Claim that Trial Counsel was Ineffective for Not Impeaching T.T. About Her Failure To Give His Phone Number to Officers is Procedurally Defaulted and Without Merit.**

Petitioner asserts his trial attorney was ineffective for failing to impeach T.T. about not

giving Petitioner's phone number to police officers when she reported that he sexually assaulted

her. "At trial, this character witness admitted to having the defendant's phone number which,

according to the police reports, she never gave the police." (Dkt. 1, pg. 6); (Dkt. 22, pg. 19-20.)

Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise it in

one full round of state court review. (Dkt. 12, pg. 11.) Respondent is correct.

Petitioner asserted this claim in his *pro se* post-conviction petition before the trial court.

(Dkt. 11-12, pg. 91-94.) He also raised it in his *pro se* PLA in the Illinois Supreme Court. (Dkt.

11-11, pg. 13-17.) He did not argue it, however, in his post-conviction appeal, where he was

represented by an appointed attorney. (Dkt. 11-7 and 11-9.)

Section 2254(b) requires state prisoners to fully and fairly present their constitutional

claims in "one complete round" of state court review before seeking federal habeas relief.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025

(7th Cir. 2004). A prisoner must present his claim both "to the Illinois Appellate Court and . . . in

a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930

(7th Cir. 2007); *Lewis*, 390 F.3d at 1025 (the claim must be asserted "at each and every level in

the state court system"). This requirement exists even though Petitioner, like most Illinois post-

conviction petitioners, was provided counsel for his post-conviction appeal. *See Lewis*, 390 F.3d at 1027. Accordingly, this claim does not satisfy § 2254(b)'s exhaustion requirement and, because Petitioner cannot now return to state court to exhaust it, it is procedurally defaulted. *Id.* at 1026-27. Petitioner having demonstrated neither cause and prejudice nor actual innocence to excuse the default, the claim is denied as procedurally defaulted.

Beyond the default, the claim is without merit. While the state appellate court did not address this claim, the state trial court did and denied it on the merits. (Dkt. 11-12, pg. 147-48.) In a merits review, this Court would have to determine that the state trial court stated an incorrect standard of federal law, unreasonably applied it, or unreasonably determined facts in light of the record. 28 U.S.C. § 2254(d). The trial court correctly stated the standard for a Sixth Amendment ineffective assistance of counsel claim—that "a petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Dkt. 11-12, pg. 143) (citing *People v. Erickson*, 700 N.E.2d 1027, 1032 (Ill. 1998) (citing *Strickland*, 466 U.S. at 687-94).

The state trial court determined that "Petitioner . . . failed to demonstrate. . . prejudice" since "the evidentiary scale was tipped heavily in favor of the State." (Dkt. 11-12, pg. 148.) "Even if counsel had cross-examined T.T. regarding all the issues that Petitioner has raised, in light of all the evidence presented at trial against [him], it would not have changed the result." *Id.* at 148. This determination was supported by the trial record, as well as the state appellate court's extensive examination of the record, which the state post-conviction trial court cited. *Id.* (citing *Wyman*, 2013 IL App (1st) 102615-U, at ¶ 70). Even if this Court could review the merits of this claim, it warrants no federal habeas relief. Claim 6(a) is denied.

**6(b).  Petitioner's Ineffective Assistance of Trial Counsel Claim for Failing to Use a Map to Impeach T.T.'s Testimony is Without Merit.**

Petitioner argues his trial attorney failed to use the hand-drawn map Petitioner provided to question T.T. about two landmarks she said she saw while Petitioner drove her from her apartment to his: a bowling alley and a police station.  (Dkt. 1, pg. 6.)  Petitioner argued this claim in his post-conviction petition, his post-conviction appeal, and his PLA to the state supreme court.  (Dkt. 11-12, pg. 85-86; Dkt. 11-11, pg. 14-17.); *Wyman*, 2017 IL App (1st) 142338-U, ¶¶ 34-36.  The claim is thus not procedurally defaulted.  It is, however, without merit.  The state appellate court, the last state court to issue a reasoned decision on the claim, held the following:

> Petitioner's other claim of error is that his trial counsel was ineffective for failing to try to impeach T.T. with a map. T.T. testified about the route that they drove when defendant picked her up, but she testified that she saw landmarks that would not have been along that route. At the outset, we should note that trial counsel did use a satellite image map to elicit testimony from petitioner on this subject, but petitioner maintains it should have been done during the cross-examination of T.T. and with a different kind of map. In his petition, he maintained that trial counsel should have used a hand-drawn map that he prepared, but on appeal he argues that counsel should have used a Google Maps image.
>
> As the State points out, the transcript of T.T.'s cross-examination reveals that she was questioned about her observations of the areas she and petitioner traveled. There was, however, never any dispute about whether petitioner and T.T. were in the car together and at his apartment together. Petitioner maintains that cross-examining T.T. with the map would have revealed "the total implausibility of her story." We disagree. Petitioner also was able to present to the jury his version of their travels with a map and rebut anything offered by T.T. Her limited, putatively inaccurate remarks about their route would not be sufficient to substantiate a claim for postconviction relief.

*Wyman*, 2017 IL App (1st) 142338-U, ¶¶ 34-36.

The state appellate court's analysis was neither contrary to nor an unreasonable application of clearly established Supreme Court law; nor did it involve an unreasonable determination of the facts in light of the evidence.  *See* § 2254(d).  As noted in this Court's prior discussion, the state appellate court correctly stated the ineffective assistance of counsel standard—that Petitioner had

to show both "that counsel's performance fell below an objective standard of reasonableness" and that he "was prejudiced." *Wyman*, 2017 IL App (1st) 142338-U, ¶ 28; *Strickland*, 466 U.S. at 687.

The state appellate court also reasonably applied the standard. First, as noted by the state court, there was never any dispute that Petitioner drove T.T. from her apartment to his. Also, Petitioner's attorney questioned T.T. about the route taken and how far south on Western Ave. they traveled, to which she repeated that they went past the police station on Belmont Ave. (3200 block of Western Ave). (Dkt. 11-26, pg. 71.) Though not during T.T.'s testimony, Petitioner's attorney did use a map when questioning Petitioner, who pointed out where his apartment was (the 4300 block of Western) and the location of several nearby landmarks, such as the Western El Stop on the 4700 block. (Dkt. 11-20, pg. 154-55.) The jury thus had information that the landmarks T.T. stated she passed were more than a mile south of Petitioner's apartment.

Furthermore, according to T.T.'s and Petitioner's trial testimony, he drove her not only from her apartment to his, but also to his office, Chicago Joe's restaurant, and the Christopher House School. (Dkt. 11-20, pg. 46-47; Dkt. 11-26, pg. 33-34.) Given the multiple places Petitioner drove T.T., had his attorney used a map to show that the landmarks she identified were a mile south of Petitioner's place, contrary to his contention, it would not have demonstrated "the total implausibility of her story." *Wyman*, 2017 IL App (1st) 142338-U, ¶ 24. The state appellate court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law; nor was it an unreasonable determination of facts in light of the evidence. *See id.*; § 2254(d). Claim 6(b) is without merit and denied.

**7. Petitioner's Claim of a Confrontation Clause Violation With His Attorney's Failure to Use a Map Is Both Procedurally Defaulted and Without Merit.**

Petitioner asserts that his trial attorney's refusal to use a map to impeach T.T.'s testimony about landmarks she stated she saw violated his Sixth Amendment right to confront witnesses. *See*

(Dkt. 22, pg. 18-24.) To the extent this claim is the same as his claim that trial counsel was ineffective for failing to adequately impeach T.T.'s testimony with a map (Claim 6(b)), the claim warrants no federal habeas relief for the reasons stated above. To the extent Petitioner's Confrontation Clause claim is distinct, he did not argue it until his post-conviction PLA. (Dkt. 11-11, pg. 12-17, 38-41.) As Petitioner explains in his Traverse Brief: "At the time Petitioner composed his post-conviction petition, he still did not grasp the full legal portent of his trial counsel's disast[]rous performance." (Dkt. 22, pg. 22.)

Though Petitioner was *pro* se during most of his post-conviction proceedings, § 2254(b) still required him to fully and fairly present his claim at each level of state court review. *Boerckel*, 526 U.S. at 844-45. While the facts of this claim may have been presented at each level of state court review, Petitioner had to present "both the operative facts and controlling legal principles" to exhaust his claim. *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018). This claim is unexhausted and procedurally defaulted, and Petitioner makes no showing of cause and prejudice or actual innocence to excuse the default.

Furthermore, the claim lacks merit. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)). Claim 7 is denied.

## 8. The State Appellate Court's Harmless-Error Analysis Was Not Unreasonable.

Petitioner asserts that the Illinois appellate court on direct review "ruled that over 20 errors were made against the defense during trial, including the admission of irrelevant evidence and numerous incidents of prosecutorial misconduct," but the appellate court "weighed them for prejudice individually to find harmless error rather than for their cumulative effect, denying the

petitioner his 5th and 14th Amend. rights of due process." (Dkt. 1, pg. 5.) Petitioner asserted this claim in his petition for rehearing on direct appeal and in his PLA to the state supreme court on direct review. (Dkt. 11-5, pg. 3-4; Dkt. 11-6, pg. 12-16.)

"The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (internal quotation marks and citation omitted). Petitioner must demonstrate that, when "considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Id.* But to consider the cumulative effect of trial errors, a reviewing court may "consider only plain errors or errors which were preserved for appellate review." *Id.* at 825; *Sanchez v. City of Chicago*, 880 F.3d 349, 361 (7th Cir. 2018).

As discussed above, most of the errors at Petitioner's trial were not preserved. The only trial errors preserved for appellate review were the erroneous admission of the handwritten notes, blacked out sunglasses, and a stun gun. *Wyman*, 2013 IL App (1st) 102615-U, ¶ 63. The other evidence (license plates, wire cutters, black clothing, and various tools), as well as the arguably improper prosecutorial comments, were relevant, not properly objected to at trial, or not plain error. *See id.* at ¶¶ 65, 72-73, 81-96.

As to the trial court's error with "admitting evidence of the handwritten notes, stun gun, and blacked-out sunglasses," the state appellate court considered the cumulative effect when determining that their admission was harmless error.[9] *Id.* at ¶¶ 67, 73. That determination, as

---

[9] Even if the unpreserved errors of prosecutorial misconduct and admission of black clothing and a trick briefcase were included in the state appellate court's harmless-error analysis, its opinion indicates clearly that it would have come to the same conclusion. The appellate court repeatedly referred to the evidence against Petitioner as overwhelming and not closely balanced, and stated that none of the trial errors affected the jury's verdict. *Wyman*, 2013 IL App (1st) 102615-U, ¶¶ 57, 70, 90, 93.

discussed earlier, was reasonable, as the court carefully considered the trial evidence and concluded that the evidence against Petitioner was overwhelming. *Id.* at ¶¶ 4-47, 68-70. No federal habeas relief is warranted for this claim. *See* § 2254(d); *Sullivan*, 508 U.S. at 278.

**9.     Petitioner's Claim that the State Appellate Court Erroneously Determined that the Trial Evidence was Not Closely Balanced is Non-Cognizable and Without Merit.**

Petitioner's § 2254 petition asserts that the state appellate court mischaracterized that there was a "mountain of evidence" against him when determining that the trial evidence was not closely balanced to allow plain error review. (Dkt. 1, pg. 7.) According to Petitioner, much of the evidence against him consisted of items from and photographs of his apartment—"all totally irrelevant to both the central issue of consent and the critical harmless error calculation." *Id.*

To the extent this claim repeats Petitioner's challenge to the state appellate court's harmless-error analysis, the claim is without merit for the reasons stated above. To the extent he challenges the state appellate court's determination that plain-error review was unavailable under Illinois law, his challenge concerns only a state law issue. Federal courts on habeas corpus review may entertain only claims of constitutional errors. *See* 28 U.S.C. § 2254(a). "[E]rrors of state law in and of themselves are not cognizable on habeas review." *Perruquet*, 390 F.3d at 511 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

This Court will not consider, at least not as a stand-alone claim for federal habeas relief, the state appellate court's determination that Illinois plain-error review was unwarranted. This claim is without merit and warrants no federal habeas relief. Claim 9 is denied.

For all the reasons stated above, this Court cannot grant federal habeas relief for any of Petitioner's claims. His § 2254 petition is denied.

### III. NOTICE OF APPEAL RIGHTS AND CERTIFICATE OF APPEALABILITY

Petitioner is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, *see* Fed. R. Civ. P. 59(e), and suspends the deadline for filing an appeal until the motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). Neither the time to file a Rule 59(e) motion nor the time to file a Rule 60(b) motion can be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court refuses to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate, much less disagree, with this Court's resolution of his claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008); 28 U.S.C. § 2253(c)(2).

### IV. CONCLUSION

Petitioner's habeas corpus petition, (Dkt. 1), is denied. Any pending motion is denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Stephanie Dorethy as Respondent; (2) add Petitioner's present custodian, Christine

Brannon-Dortch, Warden of Hill Correctional Center, as Respondent; (3) alter the case caption to *Wyman v. Brannon-Dortch*; and (4) enter a Rule 58 Judgment in favor of Respondent and against Petitioner.  Civil Case Terminated.

**SO ORDERED.**                                                 **ENTERED: July 16, 2021**

**JORGE L. ALONSO**
**United States District Judge**